IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 09-cv-02923-PAB

BRANDY MARTIN,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

**ORDER REVERSING THE ADMINISTRATIVE LAW JUDGE**
_____

This matter comes before the Court on plaintiff Brandy Martin's complaint [Docket No. 3], filed on December 14, 2009. Plaintiff, through counsel, seeks review of the final decision of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for disability insurance benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

On September 26, 2006, plaintiff filed an application for disability insurance benefits, alleging a disability onset date of May 25, 2005. R. at 97-103. After plaintiff's claim was denied at the initial level, R. at 60-62, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 63. An ALJ conducted a hearing on November 20, 2008. R. at 3-31. In addition to plaintiff's testimony, the ALJ received the testimony of Pat Paulini, a Vocational Expert ("VE"). On December 18, 2008, the ALJ determined

that plaintiff was not disabled within the meaning of the Act. R. at 58. Plaintiff appealed this decision to the Appeals Council, who declined review. R. at 32-34. Therefore, the ALJ's denial stands as the Commissioner's final decision on this matter. Plaintiff filed a timely appeal with this Court, making the Commissioner's final decision reviewable. *See* 42 U.S.C. § 405(g) (2006); *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the Court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order

to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in

the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### B. The ALJ Decision

In her December 18, 2008 decision, the ALJ reached step five in the sequential five-step analysis. At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date through her last date insured. R. at 45. At step two, the ALJ determined that plaintiff had the following severe impairments: multiple sclerosis and depression. R. at 46. At step three, the ALJ concluded that plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 46.

The ALJ then turned to the task of determining plaintiff's RFC and found that she had the residual functional capacity to perform

> sedentary work as defined in 20 CFR 404.1567(a) except that claimant requires work that is unskilled and a work environment that is low stress, with no extremes in temperature (especially heat). Such work may not expose claimant to hazardous conditions (e.g., unprotected heights, dangerous machinery, etc.). Claimant may perform postural activities (crawl, crouch, kneel, stoop, etc.) on an occasional basis.

R. at 48. The ALJ further explained that this RFC

> accommodates claimant's decreased ability to lift/carry items of medium or light weight by limiting her to jobs at the sedentary level of exertion; accommodates claimant's decreased ability to perform postural activities by limiting her to jobs that require such activities on no more than an occasional basis; and, accommodates claimant's fatigue, pain levels, and resulting limitations on her concentration, by limiting her to unskilled work in low-stress environments with no temperature extremes and with no hazardous conditions present.

R. at 56. In applying this RFC at step four, the ALJ found that plaintiff was not able to perform her past relevant work as a cashier, stocker, and retail shoe salesperson. R. at 56. At step five, the ALJ concluded that, in light of plaintiff's age, education, work experience and RFC, there were jobs existing in significant numbers in the national economy that plaintiff could perform. R. at 57. Based on her step-five findings, the ALJ concluded that plaintiff had not been under a disability, as it is defined under the Act, from her alleged onset date of May 25, 2005 through June 30, 2008, her last date insured. R. at 58.

### C. Analysis

In her appeal, plaintiff argues the ALJ erred by: (1) finding that plaintiff's combination of impairments did not meet or equal a listed impairment at step three; (2)

formulating her RFC based on less than substantial evidence at step four; and (3) concluding that plaintiff could perform jobs inconsistent with her RFC at step five.

### 1. Alleged Step Three Error

Plaintiff argues that the ALJ erred in concluding at step three that plaintiff's combination of impairments did not meet or equal Listing 11.09 for multiple sclerosis. Listing 11.09 requires that a claimant establish a diagnosis of multiple sclerosis along with either

    A.    Disorganization of motor function as described in 11.04B; or
    B.    Visual or mental impairment as described under the criteria in 2.02, 2.03, 2.04, or 12.02; or
    C.    Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

20 C.F.R. Pt. 404, Subpt. P. Appendix 1, Listing 11.09.  The ALJ found that, although the medical evidence clearly established plaintiff's diagnosis of multiple sclerosis, "it fails to establish the required levels of motor function disorganization, visual or mental impairment, or motor function fatigue and muscle weakness."  R. at 46.

Plaintiff argues the record demonstrates sufficient fatigue such that her impairments meet Listing 11.09C.  Plaintiff's medical records do demonstrate that she repeatedly reported fatigue; however, they provide no objective evidence of "significant, reproducible fatigue of motor function" as required by the Listing.  Nor do they show the "substantial muscle weakness on repetitive activity" the Listing also requires.  Plaintiff's argument that she meets these requirements is belied by treating physician Dr. Deborah Fisher's successive physical examinations finding plaintiff's physical functions

were relatively normal and noting only occasional mild problems in her physical capabilities.  *See* R. at 364, 526, 537, 543**,** 558, 563-64, 570, 575, 587, 619.

Alternatively, plaintiff argues her multiple sclerosis meets Listing 11.09B because she suffers a mental impairment that satisfies Listing 12.02.  Listing 12.02 requires that a claimant's "[h]istory and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities" and requires the satisfaction of either 12.02A and B (requiring certain medically documented symptoms and marked restrictions) or the satisfaction of 12.02C (requiring less serious limitations of a longstanding duration currently attenuated by treatment).  *See* 20 C.F.R. Pt. 404, Subpt. P. Appendix 1, Listing 12.02.  Plaintiff claims that she suffers disturbance in mood and emotional liability, thereby satisfying Listing 12.02A.  She also claims that she suffers several marked restrictions in functioning, thereby satisfying Listing 12.02B.  However, the record shows that these symptoms are related to plaintiff's mood disorder, not her multiple sclerosis.  Because this mood disorder predated her multiple sclerosis and there is no evidence that it is an organic mental disorder "associated with a dysfunction of the brain," it is not relevant under Listing 12.02.  *See id.*[1]  There is evidence that plaintiff's multiple sclerosis itself may cause mild to moderate psychological abnormalities, but this evidence is insufficient to show that it causes the

---

[1] Even accepting that plaintiff's mood disorder is relevant to Listing 12.02, and thereby Listing 11.09B, plaintiff cannot meet Listing 12.02B.  As discussed below, the ALJ properly found that plaintiff did not have the marked restrictions required for her mood disorder to meet the criteria for Listing 12.04, and these same marked restrictions are also the criteria for Listing 12.02B.

7

marked limitations required by Listing 12.02. *See* R. at 344-45 (speech pathologist testing showing plaintiff suffers "mild to moderate" high level cognitive deficits associated with her multiple sclerosis).

Nor did the ALJ err in finding that plaintiff did not meet Listing 12.04. The ALJ rejected Nurse Practitioner Sallie Charles' opinion, co-signed by Dr. Michael Seller, finding plaintiff suffered the marked limitations required by this Listing. *See* R. at 645-53. The ALJ did not err in assigning this opinion little weight, as she concluded that "neither the record of care by those healthcare providers nor any other credible evidence of record supports the assignment of such severe limitations of claimant's ability to perform work-related functions." R. at 55. The Court agrees with this assessment. Nurse Practitioner Charles' progress notes do not support her opinion that plaintiff suffers several marked limitations, nor do any progress notes from Dr. Seller. For instance, Charles opined that plaintiff suffers "marked difficulties in maintaining concentration, persistence or pace" and marked limitation in her "[a]bility to maintain attention and concentration for extended periods," and "ability to work in coordination with or proximity to others without being distracted by them." R. at 647, 649. However, Charles' progress notes reflect successive mental exams where "no problems [were] noted with judgment, attention/concentration, memory or motor behavior." *See* R. at 429, 455, 468, 624, 629, 635. These inconsistencies constitute "good reasons" for rejecting this treating source and her opinions. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Therefore, the ALJ did not err in finding that plaintiff's impairments did not meet or equal a Listing at step three.

### 2. Formulation of Plaintiff's RFC

Plaintiff contends that her RFC did not adequately reflect her fatigue, her sensitivity to stress, and her inability to concentrate. Plaintiff submits that these limitations preclude her ability to work forty hours a week, eight hours a day and that the ALJ erred in rejecting several medical opinions finding the same. The Court disagrees. The ALJ restricted plaintiff to "sedentary work" that is "unskilled" and "low stress." R. at 48. Substantial evidence supports these limitations, as plaintiff's medical treating physician consistently characterized her symptoms as "mild." *See, e.g.*, R. at 543 (suffered a "mild flare of her multiple sclerosis"); 619 ("continues to have suggestions of mild flares"); 677 ("relatively stable" but "could also be exhibiting low-grade exacerbation symptomatology").

Contrary to plaintiff's objections, the ALJ properly rejected medical opinions suggesting that plaintiff was unable to perform even low stress work. For the reasons discussed above, the ALJ did not err in rejecting Nurse Practitioner Charles' opinion as to plaintiff's limitations. The ALJ also did not err in rejecting the opinion of consultive internist Dr. Claudia Elsner. Dr. Elsner examined plaintiff and opined that, although her examinations showed plaintiff was "healthy" and had "no particular limitations," it is "know [sic] that patient's [sic] with multiple sclerosis often fatigue earlier" and that plaintiff's "need for a midday nap also points toward the fact she likely is not able to perform in a regular eight-hour day, respectively 40-hour a week work environment." R. at 475. The ALJ gave this opinion little weight because Dr. Elsner was "a one-time internal medicine consultative examiner, whose conclusions about claimant's ability to sustain work contrast starkly with her own examination findings." R. at 55. The ALJ

considered the proper factors in assessing Dr. Elsner's opinion and did not err in rejecting it. See 20 C.F.R. § 404.1527(d) (listing factors for weighing medical opinions, including length of treatment relationship, supportability and consistency). Finally, the ALJ did not err in rejecting Dr. Fisher's opinion that plaintiff suffers from a permanent disability preventing her to work for twelve months or longer. R. at 657. As with Nurse Practitioner Charles' opinion, the ALJ properly concluded that the record of care by Dr. Fisher, including her own progress notes, did not support Dr. Fisher's opinion that plaintiff suffered such severe limitations. See R. at 55, 364, 526, 537, 543, 558, 563-64, 570, 575, 587, 619.

### 3. Alleged Step Five Errors

Plaintiff finally argues that the Commissioner did not meet his burden at step five because the ALJ erred in finding plaintiff was capable of performing the jobs of telephone quotation clerk, document preparer, and bench assembler. Plaintiff is correct that the jobs of telephone quotation clerk and document preparer conflict with her restriction to unskilled, simple work because they require a reasoning level of three. See Dictionary of Occupational Titles 237.367-046 (telephone quotation clerk), 249.587-018 (document preparer); Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005).[2] The Commissioner essentially concedes this fact, but argues that the Court need not remand based on this error because the ALJ additionally found that plaintiff

---

[2] The ALJ restricted plaintiff to "unskilled" work, while Hackett discusses restrictions to "simple" work. See 395 F.3d at 1176 (discussing limitation to "simple and routine work tasks"). These restrictions, however, are equivalent. See Wilson v. Barnhart, 68 F. App'x 169, 172 (10th Cir. 2003) ("unskilled work requires only an ability to understand, carry out, and remember simple instructions") (citing SSR 85-15, 1985 WL 56857 at *4).

was capable of performing the job of bench assembler, which requires only a reasoning level of two.  *See* Docket No. 15 at 35-36.  Plaintiff contends that there is insufficient evidence she can perform even this job given the restrictions in her RFC.

The Dictionary of Occupational Titles ("DOT") categorizes bench assembler as "light work," exceeding the ALJ's limitation of plaintiff to "sedentary" work.  *See* Dictionary of Occupational Titles 706.684-042.  The DOT defines "sedentary work" as

> Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

DOT, Appendix C.  On the other hand, the DOT defines "light work" as

> Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

*Id.*  The VE testified that bench assembler is categorized as light work "because of the production pace, not because of standing or lifting."  R. at 29.  However, the VE did not explain, nor did the ALJ inquire, how a job requiring a production rate pace, which according to the DOT entails "constant stress and strain," comported with the ALJ's

11

finding that plaintiff's "fatigue, pain levels, and resulting limitations on her concentration" limited her to low stress work. *See* R. at 56. The ALJ did not ask the VE to reconcile this conflict and explain how a production pace requirement comports with plaintiff's RFC; therefore, the ALJ committed reversible error in light of the holding in *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) (holding that "the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability"); *see also* SSR 00-4p, 2000 WL 1898704 at *2 (Dec. 4, 2000) ("When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.").

The Commissioner argues that because the VE cited to the DOT in her testimony, the ALJ had no duty to inquire as to potential conflicts between this testimony and the DOT, and cites *Gibbons v. Barnhart*, 85 F. App'x 88 (10th Cir. 2003), in support. *See id.* at 93 ("Once the VE stated that he was relying on the DOT, the ALJ had no further duty to investigate."). *Gibbons*, however, found that the plaintiff had failed to identify "any discrepancies" between the DOT and the VE's testimony. *See id.* In contrast, here the VE specifically testified that the bench assembler job required maintaining a "production pace" and was light work, but the ALJ did not inquire how this requirement could be reconciled with an RFC of low-stress, sedentary work in light of the DOT's statement that production pace involves "constant stress." At step five, the

burden is on the Commissioner to "thoroughly develop the vocational evidence," the burden is not on the claimant "to produce or develop vocational evidence at step five." *See Haddock*, 196 F.3d at 1090, 1088.  On remand, the Commissioner will need to obtain additional testimony from the VE regarding both plaintiff's ability to perform jobs requiring a reasoning level of three and jobs that require maintaining a production pace notwithstanding her limitations.

### III.  CONCLUSION

For the reasons stated above, the Court concludes that the Commissioner's finding that the plaintiff is not disabled under the Act is not based upon substantial evidence.  Accordingly it is,

**ORDERED** that the December 18, 2008 decision of the Commissioner that the plaintiff was not disabled is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

DATED March 24, 2011.

                                      BY THE COURT:

                                      s/Philip A. Brimmer
                                      PHILIP A. BRIMMER
                                      United States District Judge